IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| BRANSON JAMAL THOMPSON, # 326685, | ) | Civil Action No. 3:11-318-TMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| KENNY BROWN; AND | ) | |
| HAROLD CROCKER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

Plaintiff, Branson Jamal Thompson, filed this action on February 11, 2011.[1]  He has been incarcerated in the South Carolina Department of Corrections ("SCDC") since June 17, 2009.  See https://sword.doc.state.sc.us/scdc-public/ (last visited November 7, 2011).  He was briefly incarcerated at the Cherokee County Detention Center ("CCDC") from November 17 to December 7, 2010, awaiting an additional plea in General Sessions court.  See Kenny Brown Aff., Para. 4. Defendants filed a motion for summary judgment on June 27, 2011.  Because Plaintiff is proceeding pro se, he was advised on June 27, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint.  Plaintiff filed a response on September 26, 2011.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC.  Because this is a dispositive motion, the report and recommendation is entered for review by the court.

## **DISCUSSION**

Plaintiff alleges that he was denied proper medical care and subjected to unconstitutional conditions of confinement while at the CCDC.  Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to state a constitutional deprivation sufficient for recovery under 42 U.S.C. § 1983 as to his conditions of confinement; (2) Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs; and (3) Defendants are entitled to qualified immunity.

1.      Conditions of Confinement

Plaintiff appears to allege that his living conditions at the CCDC violated his constitutional rights.  Specifically, he claims that his mattress and blanket were confiscated for six days, he was not allowed to have any toilet tissue for six days, his clothes were taken away from him for six days, his cell was cold, he had no running water in his cell, and he was forced to sleep on a steel cot for six days.  Defendants argue that Plaintiff fails to show that his constitutional rights were violated as he has not alleged or provided evidence of any injury resulting from the alleged conditions of confinement during the time of his restrictions.  They further argue that the actions taken were based on security needs and the level of supervision necessary for the orderly operation of the institution.  Defendants also argue that all actions taken by CCDC were not a form of punishment, but were essential to maintain order and discipline following Plaintiff's destruction of jail property.

Defendants provide that Officer Lawrence Thomson was notified on November 30, 2010, about the activation of a fire alarm in C-Max, where Plaintiff was housed alone in Cell C-1.  When officers arrived they found that Plaintiff had intentionally popped the sprinkler head off in his cell, causing the cell to flood.  The officers shut the water to the cell off, inmate trustees cleaned up the

mess, and Maintenance Director Steve Wilkie was called to repair the sprinkler head. See Harold Crocker ("Crocker") Aff., Exs. A , B, and C (Incident Reports).

Defendants further provide that at approximately 1:30 p.m. on December 1, 2010, Officer Joe Bolin was working in the control room when he was notified by several inmates that the sewer lines were backing up and spilling sewage onto the floors in C-Max. Officer Bolin called Wilkie who had to call John Cudd's Plumbing to fix the sewer backup. The plumber ran an auger down the line and pulled a blanket and washcloth out of the sewer line. When officers inspected the cells of the C-Max inmates, Plaintiff was the only inmate missing a blanket and washcloth. At that time, all bedding and uniforms were taken from Plaintiff. Crocker Aff., Exs. D (Incident Report) and E (Requisition - Plumber).

On December 1, 2010, at 3:45 p.m., Officer Bolin again responded to a fire alarm in C-Max. Plaintiff had again knocked off the sprinkler head in his cell. The water was shut off and inmate trustees were called to sweep up the water. Defendants provide that Plaintiff was not forced to live in a cell with no running water and to urinate and defecate without being able to flush the toilet, but that due to his actions, water to his cell was turned off and on manually by officers for several days in an effort to prevent Plaintiff from flooding his cell again. Crocker Aff., Ex. F (Incident Report).

Defendants further assert that Plaintiff was a recalcitrant inmate. They have provided records indicating that on November 18, 2010, Plaintiff's second day at the CCDC, he received fifteen minutes off his rotation[2] due to his conduct. Plaintiff lost his rotation for passing notes to other inmates on November 29, 2010. On November 30, 2010, Plaintiff lost his rotation for disrespecting an officer and breaking the sprinkler head in his room. He received no rotation again until December

---

[2]Because of security issues, inmates are released from their cells one at a time on a rotation basis for one hour per day for recreation, showering, or to clean their cells.

4, 2010 due to his actions of flooding his cell.  <u>See</u> Kenny Brown Aff., Ex. A (Log Book Pages for C-Max during relevant time period).

Plaintiff, in his opposition memorandum, admits he popped sprinkler heads on two occasions, but argues that he did so the first time because officers refused to give him more than his daily allotment of 40 sheets of toilet tissue.  He denies flushing his blanket and washcloth down the toilet and argues that he was visiting with his lawyer at the time this allegedly occurred.  Plaintiff argues that he popped the sprinkler head the second time because of the alleged conditions of confinement.  <u>See</u> Plaintiff's Opp. Mem. and Affidavit.

The Eighth Amendment provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined."  <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).[3]  However, the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components.  First, deprivations must be objectively serious in the sense that they violate contemporary notions of decency.    <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981).  Second, the plaintiff must show that subjectively the prison officials acted with a sufficiently culpable state of mind.  <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir.), <u>cert. denied</u>, 510 U.S. 949 (1993).  The Supreme Court has held that prison officials cannot be held liable under the Eighth Amendment unless they knew of and

_____

[3]This standard applies to convicted prisoners.  To the extent that Plaintiff was a pretrial detainee at the time of the alleged incident, the Fourteenth Amendment analysis discussed below applies.

4

disregarded an excessive risk to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825 (1994).

A plaintiff must produce evidence of serious or significant physical or emotional injury resulting

from the challenged conditions to withstand summary judgment on a prison living conditions claim.

Strickler, 989 F.2d at 1380-81.  Here, Plaintiff fails to establish a constitutional claim because he has

not shown any serious or significant physical or emotional injury resulting from the alleged

conditions.  See Strickler, 989 F.2d at 1380-1381.  Further, he fails to show that Defendants acted

with a sufficiently culpable state of mind.

Even if Plaintiff should be considered a pretrial detainee at the time of the alleged incidents,

he fails to show that his constitutional rights were violated.  Allegations of deprivations of pretrial

detainees are considered under the due process clause of the Fourteenth Amendment instead of the

cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th

Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651

(1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied
> with the constitutional guarantees traditionally associated with criminal
> prosecutions...the State does not acquire the power to punish with which the
> Eighth Amendment is concerned until after it has secured a formal
> adjudication of guilt in accordance with the due process of law.  Where the
> State seeks to impose punishment without such an adjudication, the pertinent
> constitutional guarantee is the Due Process Clause of the Fourteenth
> Amendment.

(Citations omitted).  However, the due process rights of detainees are at least coextensive with Eighth

Amendment rights of convicted prisoners, and perhaps greater.  Whisenant v. Yuam, 739 F.2d 160

(4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Ct., 490 U.S. 296, 298 (1989);

Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978), cert. denied, Moffit v. Loe, 446 U.S. 928

(1980).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by the detainee amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Plaintiff fails to show any expressed intent on the part of Defendants to punish him. As discussed above, Defendants actions were taken to restore order after Plaintiff broke sprinkler heads on two occasions and after they reasonably believed that Plaintiff flushed a blanket and washcloth down the sewer. Further, Plaintiff fails to show that his living conditions caused him anything more than de minimis injuries. A de minimis injury does not violate the Fourteenth Amendment. See Ingraham, 430 U.S. at 674 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); Westmoreland v. Brown, 883 F. Supp. 67, 76 (E.D.Va. 1995)("a particular condition constitutes punishment only where it causes physical or mental injury"). Plaintiff fails to present anything to show that he suffered any injury as a result of the alleged conditions of confinement. Margaret Lewis, a nurse at the CCDC, states that she has searched the CCDC medical records and found no written requests for medical attention concerning Plaintiff. Lewis Aff., Paras. 1-2.

2.    Medical Claims

Plaintiff alleges that he was denied medical attention for his complaints that he had blood in his urine and feces. Defendants contend that Plaintiff fails to show that they were

deliberately indifferent to his medical needs.  They argue that Plaintiff never complained of any

medical issues during his stay at the CCDC.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth

Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of

pain," <u>Id.</u>, quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976).[4]  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the
> authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs
> of prisoners constitutes the "unnecessary and wanton infliction of pain,"
> <u>Gregg v. Georgia</u>, <u>supra</u>, at 182-83, 96 S.Ct. at 2925 (joint opinion),
> proscribed by the Eighth Amendment.  This is true whether the indifference
> is manifested by prison doctors in their response to the prisoner's needs or by
> prison guards in intentionally denying or delaying access to medical care or
> intentionally interfering with the treatment once prescribed.  Regardless of
> how evidenced, deliberate indifference to a prisoner's serious illness or injury
> states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or
> treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment.  Medical malpractice does not
> become a constitutional violation merely because the victim is a prisoner.  In
> order to state a cognizable claim, a prisoner must allege acts or omissions

---

[4]Medical claims of a pretrial detainee are governed by the Due Process Clause of the
Fourteenth Amendment, rather than the Eighth Amendment.  <u>See</u> <u>City of Revere v. Massachusetts
Gen. Hosp.</u>, 463 U.S. 239 (1983).  However, the inquiry as to whether a pretrial detainee's rights
were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under
the Eighth Amendment (deliberate indifference to a serious medical need).  <u>See</u> <u>Martin v. Gentile</u>,
849 F.2d 863, 871 (4th Cir. 1988)(citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)).

> sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. As noted above, Nurse Lewis stated that Plaintiff submitted no written requests for medical attention. Lewis Aff., Paras. 1-2. Although Plaintiff alleges that a nurse refused to see him, he has not named that nurse, or any other medical provider, as a defendant.

    3.    <u>Qualified Immunity</u>

Defendants contend that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## <u>CONCLUSION</u>

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 21) be **granted**.


Joseph R. McCrorey
United States Magistrate Judge

November 7, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).